739 So.2d 1043 (1999)
Shirley Ann JOINER, Appellant,
v.
James JOINER, Jr., Appellee.
No. 98-CA-00453-COA.
Court of Appeals of Mississippi.
April 6, 1999.
Thomas C. Levidiotis, Oxford, Attorney for Appellant.
Claude Melvin Davis, Oxford, Joanne Nelson, Jackson, Attorneys for Appellee.
BEFORE McMILLIN, C.J., KING, P.J., AND DIAZ, J.
McMILLIN, C.J., for the Court:
¶ 1. Shirley Ann Joiner has appealed from a judgment of divorce entered in the Chancery Court of Lafayette County dissolving her marriage to James Joiner, Jr. on the ground of irreconcilable differences. Mrs. Joiner alleges that the divorce judgment is void because there was no written agreement between her and her husband resolving all matters of child custody and support and settling all property rights between the parties filed prior to entry of the divorce judgment. Absent such a written agreement, Mrs. Joiner argues that the chancellor was without authority to grant a divorce on the ground of irreconcilable differences. We agree and conclude that the judgment must be reversed.

I.

Facts
¶ 2. Mrs. Joiner filed suit for divorce against Mr. Joiner charging him with cruel and inhuman treatment. Alternatively, she alleged in her complaint that irreconcilable *1044 differences had arisen between her and her husband. Mr. Joiner filed an answer denying Mrs. Joiner's entitlement to a divorce on either ground. The matter was ultimately set for trial; however, on the trial date the parties appeared and requested that the chancellor permit them to explore a negotiated settlement of all property rights and matters relating to their children so that the divorce could be obtained by mutual agreement on the ground of "irreconcilable differences." There were other cryptic references on both sets of notes that apparently related to certain parcels of real property owned by the parties. Though the parties had two minor children at the time, neither set of notes made any mention of an award of custody, setting child support or providing responsibility for such matters as health insurance or undergraduate education expenses for the two children.
¶ 3. After lengthy negotiations consuming most of the day, both parties appeared in open court through their respective attorneys and announced to the chancellor that they had arrived at a settlement of all relevant issues and that, therefore, a trial would not be necessary. Because of logistical difficulties involved in reducing the agreement to writing, the parties told the chancellor that they would present a child custody and property settlement agreement and a divorce judgment at a later time. An order to that effect was entered by the chancellor. Prior to departing the courthouse, both Mr. and Mrs. Joiner signed the sheets of note paper used by the attorneys to record the progress of the day's negotiations. One set of notes consisted primarily of two lists, one headed "Shirley" and the other "James," which apparently reflected the agreed division of numerous items of personalty. The other set of notes consisted primarily of an apparent random list of items of personalty, with each item followed by either the initials "SJ" or "JJ."
¶ 4. Later, an instrument entitled "Agreement for Settlement of All Property Rights Between the Parties and the Custody and Maintenance of Minor Children, and for Proceeding on Grounds of Irreconcilable Differences" was drafted by one of the attorneys. Mr. Joiner signed the document; however, Mrs. Joiner declined to do so.
¶ 5. Despite Mrs. Joiner's refusal to sign the proposed agreement, the chancellor, at the urging of Mr. Joiner, entered a judgment of divorce on the ground of irreconcilable differences. In his judgment, the chancellor found as a matter of fact that "the parties made adequate and sufficient provision by a handwritten agreement for the settlement of all property rights between them." This finding apparently referred to the two sets of lawyers' notes signed by the parties prior to leaving court on the trial date. The chancellor then proceeded to find that "the handwritten agreement has been incorporated into the [more formal agreement unsigned by Mrs. Joiner]."
¶ 6. Though both the formal incompletely-signed agreement and the signed handwritten notes were filed with the judgment, the chancellor specifically found that the handwritten agreement "should be, and the same is hereby, approved by the Court and incorporated as a part of this Decree, as set forth herein." The chancellor did not purport to deal with the legal effect of the unsigned agreement filed with the judgment beyond his finding that the terms of the handwritten agreement had been "incorporated" into it.

II.

Discussion
¶ 7. Section 93-5-2 of the Mississippi Code is commonly referred to as the "no-fault" divorce statute. It permits a married couple to obtain a divorce without the necessity of one spouse proving one of the statutory grounds for divorce involving misconduct or other failing on the part of the other spouse. The actual legal ground for granting a divorce under Section 93-5-2 *1045 is that both parties represent to the chancellor that irreconcilable differences have arisen between them such that there is no purpose to the continuation of the marriage relationship.
¶ 8. The dissolution of a valid marriage by divorce is purely a creature of statute. Wells v. Roberson, 209 So.2d 919, 923 (Miss.1968). Jurisdiction to award a divorce is vested solely in the chancery courts of the State. Miss.Code Ann. § 93-5-7 (Rev.1994). The chancellor, in acting to grant a divorce, is limited to the authority that is granted under the applicable statutes. See Price v. Price, 202 Miss. 268, 272, 32 So.2d 124, 125 (1947).
¶ 9. Under the current statutory scheme for divorces on the ground of irreconcilable differences, one of two things must occur before the chancellor can grant the divorce. One alternative is for the parties to enter into a "written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties...." Miss.Code Ann. § 93-5-2(2) (Rev.1994). If that method is pursued by the parties, the chancellor must affirmatively find that the provisions of the agreement are "adequate and sufficient" before entering judgment. Id.
¶ 10. The alternative procedure permits parties, agreeable to a divorce but unable to amicably resolve all the necessary issues, to agree in writing to submit those matters on which they cannot agree to the chancellor for resolution. Miss.Code Ann. § 93-5-2(3) (Rev.1994).
¶ 11. There is no contention in this case that the parties agreed to submitting unresolved issues to the chancellor for decision. Thus, we are faced with the proposition that the only authority under which the chancellor could have proceeded was Section 93-5-2(2).
¶ 12. With that finding, we are faced with the inescapable conclusion that the chancellor was manifestly in error when he granted an irreconcilable differences divorce to the parties. There simply is no written agreement between the parties that resolves all matters touching on child custody and support and the settlement of all property rights. The attorneys' notes signed by the parties at the end of a day's negotiations are, by any construction, incomplete and are nothing more than uninformative and practically unintelligible scribblings in many instances. While these various notes may have had some particular significance or meaning to the attorney who made the entry, there can be no legitimate assertion that this meaning can be derived solely from an inspection of the note pages themselves. In addition, these notes are devoid of any information about child custody, visitation, or the various matters touching on the support and maintenance of the children of the parties.
¶ 13. The assertion that the formal agreement, unsigned by Mrs. Joiner, was nothing more than a polished form of the agreement reflected in the attorneys' negotiating notes is patently unsupportable. In the first place, the meaning of many of the entries in the handwritten notes is unclear without an outside source to explain their significance. Assuming that the necessary interpretation were available through testimony from the attorney who made the note, that interpretation would be a necessary element of the agreement in order to give it meaning. This interpretive testimony necessary to give meaning to otherwise undecipherable scratchings would violate the requirement of the statute that the agreement between the parties must be in writing. Neither can it be argued with any force that the formal unsigned agreement is merely an alternate embodiment of the handwritten agreement, much like an appended translation to an instrument written in a foreign language. Even the most cursory comparison between the formal agreement and the handwritten notes reveals that the formal agreement contains multiple representations of purported agreements, none of which have any parallel existence in the *1046 handwritten notes. Chief among these are the rather detailed provisions regarding child custody, child support, provisions for health care for the children and provisions for the undergraduate education of the children.
¶ 14. The chancellor found, as a matter of fact, that the parties had resolved all of their differences during the day of negotiations that took place on the scheduled trial date. That finding was based upon a representation to the chancellor to that effect by counsel for both parties. Mrs. Joiner's behavior after the apparently-successful negotiation session in refusing to ultimately acknowledge in writing the terms of an agreement that, by all indications, she had verbally agreed to was evidently a source of irritation and frustration to both Mr. Joiner and the chancellor. Her behavior is, on its face, certainly puzzling since there is no assertion that she claimed the formal agreement did not accurately reflect the terms of the tentative settlement reached on the trial date. There is also a representation by her attorney that she did not oppose the entry of a divorce judgment, but that she had simply decided for unexplained reasons that she would not execute the formal agreement. The frustration of the chancellor with Mrs. Joiner's apparently obstinate behavior is an understandable reaction in these circumstances, but there is no provision in the law that would permit the chancellor to relieve his frustration by granting the divorce in the absence of the statutorily-mandated "written agreement for the custody and maintenance of any children of [the] marriage and for the settlement of any property rights between the parties...." Miss. Code Ann. § 93-5-2(2) (Rev.1994).
¶ 15. The statute on irreconcilable differences divorce is unequivocal. "No divorce shall be granted pursuant to this subsection until all matters ... have been... agreed upon by the parties and found to be adequate and sufficient by the court...." Miss.Code Ann. § 93-5-2(3) (Rev.1994) (emphasis supplied). On this record, there is no basis to conclude (a) that the handwritten notes signed by the parties resolved all issues of child custody and support or property rights between the parties, or, alternatively, (b) that Mrs. Joiner agreed to all of the terms of the formal agreement subsequently prepared and filed as a part of the judgment of divorce. On that state of the record, this Court has no alternative but to conclude that the chancellor substantially exceeded his authority when he purported to grant the parties an irreconcilable differences divorce. For that reason, the judgment of divorce must be reversed and this cause remanded for further proceedings.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF LAFAYETTE COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THE TERMS OF THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.