991 So.2d 646 (2008)
Charles BOUGARD, Appellant
v.
Mary BOUGARD, Appellee.
No. 2007-CA-00835-COA.
Court of Appeals of Mississippi.
September 23, 2008.
*647 Karen Wilson Tyler, attorney for appellant.
Amanda Whaley Smith, attorney for appellee.
Before KING, C.J., BARNES and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. On May 1, 2007, Charles and Mary Bougard were granted a divorce based on irreconcilable differences. The parties initially agreed to all the terms of the divorce, including the property division. However, Charles subsequently became aggrieved by the property division and, therefore, appeals the chancellor's judgment. Finding no error, we affirm.

FACTS
¶ 2. On June 16, 2004, Mary filed a complaint for divorce and sought temporary relief from her husband, Charles. The parties had been married since December 30, 1995, and no children were born to the marriage. Mary properly noticed a hearing on her request for temporary relief. On July 30, 2004, forty-three days after the hearing had been noticed, a hearing on the temporary support matter occurred.
¶ 3. Charles appeared at the hearing, without an attorney, and requested additional time to obtain representation. The trial court denied the request and proceeded with the temporary support hearing with Charles representing himself. At the hearing, evidence was put forward that Mary made approximately $10,500 per year, while Charles made approximately $51,000 per year.
¶ 4. The primary dispute at the temporary support hearing related to a $47,743.86 loan from CitiFinancial, for which the marital house was collateral. Mary testified that the martial dwelling was originally debt free. However, the parties began to draw a line of credit against the marital home. Mary testified that at Charles's direction, she borrowed $10,000 and then $5,000 on this line of credit. As a part of Mary's testimony, a security agreement for a $47,743.86 loan with the purported signatures of both Mary and Charles was admitted into evidence.
¶ 5. Charles acknowledged having directed Mary to obtain loans of $10,000 and $5,000, but he had no idea where the $47,743.86 amount came from. Also, he denied having signed the security agreement.
¶ 6. At the end of the hearing, the chancellor granted Mary the exclusive use and possession of the marital dwelling, as well as possession of two automobiles. Charles was granted possession of two additional automobiles, and he was required to pay the note on the $47,743.86 loan, the monthly insurance premium, and the taxes on the property.
¶ 7. After the temporary hearing, Charles hired counsel to represent him in the divorce proceedings. He filed an answer to the complaint on August 26, 2004. On September 30, 2004, Mary filed a motion to hold Charles in contempt for failure to abide by the temporary support order. *648 After a hearing on the contempt proceedings, an order was entered on December 16, 2004, which held Charles in contempt for failure to pay the CitiFinancial note, insurance, or property taxes. The order required Charles to bring the CitiFinancial note current by December 31, 2004, or be incarcerated without further order. Charles was later incarcerated as a result of this order, but he was released upon his payment of $1,200 and his promise to get insurance for the house by February 15, 2005.
¶ 8. On February 15, 2005, the chancellor issued another contempt order. This order suspended the incarceration for two weeks provided that Charles would make a $500 payment every two weeks, beginning two weeks from the date of the order to catch up the existing deficiency. On the same day, the parties agreed to withdraw their grounds for divorce along with any defenses and allow the trial court to resolve the property issues.
¶ 9. On December 8, 2006, Charles's counsel withdrew, and new counsel was employed. Charles's new counsel then filed an amended answer. However, she failed to request or obtain leave from the trial court to file the amended answer.
¶ 10. Finally, on April 16, 2007, the day the final divorce hearing was to occur, the parties came to an agreement on the division of the marital property. The agreement required Charles to pay $35,000 in lump-sum alimony, of which $11,000 was due on or before July 15, 2007 (ninety days from the date of the order). A portion of the $11,000 was to be paid to clear and eliminate all claims of contempt against Charles. The remaining amount was to be payable in thirty-six monthly payments. Charles was ordered to pay $666.90 on the first monthly payment and $666.66 per month for the remaining thirty-five payments. The parties had the agreement read in open court and agreed that it would be binding upon them even if they did not sign a written agreed order, which was to be prepared later.
¶ 11. After the hearing, Mary prepared a written copy of the agreed order for Charles to sign. However, he refused to sign the document. Mary took the order to the chancellor and apprised him of the situation. The chancellor then signed the order in accordance with his previous statement on the record. Aggrieved by the terms of this order, Charles appeals.

STANDARD OF REVIEW
¶ 12. This Court applies a manifest error standard of review to a chancellor's decree of divorce. Peters v. Peters, 906 So.2d 64, 68(¶ 12) (Miss.Ct.App.2004). The chancellor's findings of fact will not be disturbed unless the chancellor's decision is manifestly wrong or unsupported by substantial evidence. Mitchell v. Mitchell, 823 So.2d 568, 570(¶ 7) (Miss.Ct.App.2002).

ANALYSIS
¶ 13. On appeal, Charles attacks both the temporary support order and the judgment of divorce. Therefore, we will address each subject in turn.

I. Temporary Support Order
¶ 14. Charles alleges that the chancellor erred in two respects when it came to the temporary support order. First, Charles alleges that he was denied his right to counsel when he requested an opportunity to appear with counsel. Next, Charles alleges that the chancellor failed to hear all the relevant evidence at the temporary support hearing.
¶ 15. As to Charles's first allegation of error, Charles alleges that since he was eventually incarcerated for failure to abide by the temporary support order, the temporary *649 support hearing was a quasi-criminal matter. Therefore, it was a violation of his Sixth Amendment right to be deprived of the assistance of counsel at the hearing. This claim is without merit.
¶ 16. A party in a civil action does not have a right to counsel. Chasez v. Chasez, 957 So.2d 1031, 1038(¶ 21) (Miss. Ct.App.2007). Further, the supreme court has held that counsel should only be appointed when, if the unrepresented party loses, he "may be deprived of his physical liberty." Goodin v. Dep't of Human Servs., 772 So.2d 1051, 1055(¶ 12) (Miss. 2000) (quoting Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 26-27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)). If Charles "lost" the temporary support hearing, he would not lose his physical liberty; therefore, his right to have counsel would not be triggered. Here, it would only be at the contempt hearings where that right might come into play. At each finding of contempt, Charles was represented by counsel. In addition, Charles had forty-three days to hire counsel to appear at the temporary support hearing. Still, Charles appeared before the chancellor without counsel. Therefore, this allegation of error is without merit.
¶ 17. Charles also alleges that the trial court failed to hear all of the relevant information at the temporary support hearing. Specifically, Charles alleges that the chancellor completely ignored the fact that he implicated his wife in "possible fraudulent activity." Charles alleged that his wife signed his name to a loan that totaled over $47,000 without his knowledge. However, the chancellor specifically addressed this allegation during the temporary support hearing. The chancellor stated:
And Mr. Bougard, I understand what you're saying about you don't know how thishow it got to $43,000, and I don't know either. However, I did hear you say that you acknowledged getting $10,000 on one occasion and $3,000 on another. I think I heard you say another $500.... And you didn't outright deny that it's your signature on the agreement. The Court understood that you made some of these payments in the past.
By this discussion on the record at the temporary support hearing, it is obvious that the chancellor took the allegation by Charles into consideration and gave his reasons for dismissing it. Also, Charles would have had an additional opportunity during the final divorce hearing to delve into the origination of the loan. However, the parties reached an agreement prior to that hearing. Therefore, this allegation of error is without merit.

II. Judgment of Divorce
¶ 18. Charles next attacks the chancellor's order granting a divorce and dividing the property. First, he alleges that the chancellor erred by failing to take the proper steps to equitably divide the parties' property. Specifically, Charles alleges that the chancellor abused his discretion when he failed to apply the Ferguson[1] factors to the parties' property and the Armstrong[2] factors to the alimony determination.
¶ 19. In this case, the division of the assets and the amount of alimony were set by an agreement of the parties. The agreement was made between the parties on the day of the divorce hearing. The agreement was read into the record, and both parties agreed to be bound by the *650 terms as read into the record. Further, the parties agreed to be bound regardless of whether they signed a written copy of the agreement read into the record. Therefore, there was no need for the chancellor to apply the Ferguson or Armstrong factors. Clearly, this allegation of error is without merit.
¶ 20. Charles's second allegation of error that relates to the judgment of divorce is that he was coerced into the agreement with the threat of incarceration. He alleges that the chancellor held the threat of incarceration over him if he did not agree to the terms read into the record. At the time that the agreement was read into the record, Charles had failed to abide by the temporary support order and was deficient by about $11,000. However, every previous finding of contempt was civil contempt. Charles was released from incarceration when he was able to remedy the deficiency or make appropriate accommodations. Therefore, Charles essentially held the keys to his own jail cell. Further, nothing in the record supports the idea that the chancellor coerced Charles into the agreement with the threat of incarceration. Indeed, upon questioning by the chancellor, Charles acknowledged that this was his agreement, and he intended to abide by it.
¶ 21. Charles also alleges that he cannot be bound "to the terms of a divorce order on Irreconcilable Differences where no written document was ever prepared and agreed upon." However, this statement is incorrect. This Court has held that "announcing in open court the settlement of the dispute that is the purpose for that hearing, with a recital of the terms of the settlement into the record, followed by an agreement to end the hearing, reflects an intention to be bound at that time." McDonald v. McDonald, 850 So.2d 1182, 1189(¶ 25) (Miss.Ct.App.2002), aff'd, 876 So.2d 296 (Miss.2004). Here, the agreement was read into the record. Then the chancellor asked each party:
Okay. Now, you understand that if for some reason you change your mind after we get through here, when you walk out that door and you won't sign an order or whatever, then the Court is going to go back and I'm going to have this order that's been dictated into the record and entered the same as if you had put your signature on it here today; you understand that?
Charles and Mary both stated that they understood and were agreeable to the chancellor's statement. Therefore, the parties had a binding agreement, following the procedure outlined in McDonald, and this allegation of error is likewise without merit.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF MARSHALL COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.
NOTES
[1] Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994).
[2] Armstrong v. Armstrong, 618 So.2d 1278 (Miss. 1993).