RUSSELL, J.,
for the Court:
¶ 1. Samantha Sanford appeals the Lamar County Chancery Court’s final judgment of divorce. She argues that the chancery court erred in entering the parties’ divorce without a signed property settlement agreement. Upon review, we agree. Therefore, we reverse the judgment of divorce and remand for proceedings consistent with this opinion.
*666 FACTS AND PROCEDURAL HISTORY
¶ 2. On January 28, 2008, Samantha filed a complaint for divorce and temporary relief against Leslie Sanford alleging fault grounds for divorce, including habitual cruel and inhuman treatment, habitual and excessive use of drugs, habitual drunkenness; in the alternative, Samantha alleged irreconcilable differences. She also sought custody of the parties’ minor child. On June 19, 2008, a temporary order was entered that, among other things, granted Samantha temporary physical custody of the minor child, temporary child support, and temporary alimony. Leslie was granted temporary visitation. Subsequently, the trial court entered an order setting the trial for September 10, 2009.
¶ 3. On September 10, 2009, Samantha and Leslie executed a joint motion to withdraw fault grounds, which was filed on September 11, 2009. Also on September 10, 2009, the chancellor signed an order dismissing fault grounds, which was filed the next day. That order stated “it is therefore, ordered and adjudged that the fault grounds for divorce be, and the same are hereby dismissed as to both parties[,] and this matter may proceed with a divorce on the grounds of irreconcilable differences.” Additionally, on September 10, 2009, a consent to divorce was signed by Samantha, Leslie, and counsel for each, and it was filed on September 11, 2009. The consent to divorce contained handwritten revisions. The text lined through below was actually struck through with a pen. The text italicized below was actually handwritten in the document. None of the changes were initialed by the parties. It is unknown who made the revisions, when the revisions were made, and whether the revisions were agreed to by the parties before signing. The' consent to divorce reads as follows:
The undersigned, Samantha ... and Leslie ..., enter this [ejonsent pursuant to the provisions of § 93-5-2 ... and voluntary consent to a divorce each from the other on the grounds of irreconcilable differences.
The parties do hereby voluntarily consent to permit the [c]ourt to decide the remaining issues upon which they cannot agree, and all other issues raised in the pleadings. The parties further agree that they may not withdraw their consent without leave of the [c]ourt and just cause shown. The designated issues are as-follows¿ settled.
Child-e-ustody-and-visitation;
Child support and medical;
Equitable division of-marital assets-and debts^
Identity-and division-of personal proper-⅛⅞
Almoayy if any;-and
Attorney fees and-costa, if any.

All issues are settled and will be dictated into the record.

The, undersigned parties agree and understand that the decision of the [c]ourt shall be a binding and lawful judgment.
¶ 4. Also on September 10, 2009, the parties read into the record an oral agreement concerning, among other things, child custody, visitation, and partial property division. At the time of the oral agreement, the parties had not resolved issues pertaining to the division of personal property.
¶ 5. On October 12, 2009, Samantha filed a handwritten motion to withdraw her consent to divorce, which stated: “I, Samantha Louise Sanford, hereby withdraw my consent to the divorce agreement that was discussed September 10, 2009. I wish to have my case tried before Judge Dale or any other available judge. If you have any questions, please contact me.”
*667 ¶ 6. On October 16, 2009, Leslie filed a motion for citation for contempt and to enforce settlement:
Comes now, Leslie Dewitt Sanford, by and through counsel, files this his [m]otion [f]or [c]itation [f]or [c]ontempt [a]nd [t]o [e]nforce the stipulated property settlement agreement and portions thereto and for cause would show unto the [c]ourt as follows:
1. On the 10th day of September, 2009, this matter was set for trial[,] and the parties dictated into the record a property settlement agreement of all matters[; ...] the same was accepted by the [c]ourt as the property settlement agreement in the termination of this litigation and all rights of the parties.
2. Pursuant to the stipulation in the record, Leslie’s attorney prepared the [c]hild [c]ustody, [s]upport[,] [a]nd [property [settlement [a]greement and sent the same to attorney for Samantha Sanford on the 18th day of September, 2009.
3. Further, in accordance with the stipulation, Samantha Sanford was suppose[d] to report back to her attorney on that same day, September 10, after inventorying the house and notifying counsel of the items in which Samantha Sanford determined that she wanted.
4. On the 23rd day of September, 2009, thirteen (13) days after the trial, a handwritten copy of household goods were reeeived[,] which listed the entire contents of the house.
5. Subsequent thereto, Leslie has reviewed Samantha Sanford’s list and objects to the list and that it is outside the agreement[,] and Samantha Sanford is in violation of the [c]ourt [ojrder and therefore has waived any rights to the household goods.
6. Further, as this [cjourt will remember, Samantha Sanford chose to leave the State and took the minor child of the parties and herself to Las Vegas, Nevada, to live with her sister where she has stayed. Further, at no time prior to the hearing date, has Samantha Sanford offered, requested, or discussed any of the household goods located in the home prior to the [stipulation date and the [stipulation.
7. This [cjourt should find that Samantha Sanford has violated the stipulation agreement, has caused additional attorney[’]s fees to Leslief,] ... [that] the same should be offset based on the property settlement agreement by reducing the amount paid to Samantha Sanford pursuant to the property settlement agreement^] and that she has waived all rights to all the personal property on the attached list located at the home.
8. Alternatively, Leslie has highlighted, in yellow, the items which he will agree that Samantha. Sanford can remove from the home. Said list .is attached as Exhibit “A.”
9. Further, on September 10, 2009, in open court and under oath, pursuant to the [stipulation as entered, Samantha Sanford did file an irrevocable consent to divorce[,] and that [c]onsent was ratified by [c]ourt [o]rder on September 10, 2009. On October 12, 2009, Leslie received, by fax[,] a handwritten, document, purported to be from Samantha Sanford[,] attempting to withdraw her [cjonsent and demanding a trial thereon. Leslie would show unto the [c]ourt that Samantha Sanford .has given up any right to withdraw her [cjonsent and this [c]ourt should enforce the stipulated settlement as set out.
¶ 7. Samantha filed a response to Leslie’s motion for contempt and for enforcement of settlement, and she also filed a motion for discovery and for a trial. A hearing was held on Leslie’s motion for *668 contempt and to enforce settlement, along with Samantha’s response, and the chancery court entered an order on December 2, 2009, which reads, in relevant part, as follows:
[T]his matter was set for trial on September 10, 2009, and the parties executed and filed with the [c]ourt a [c]onsent to [d]ivorce wherein they agreed that they would withdraw any and all fault grounds and proceed ... with a divorce on the grounds of irreconcilable differences, and ... all issues are settled between the parties and will be dictated into the record.
[B]ased on that consent, the [c]ourt signed an [o]rder on September 10, 2009, allowing the parties to withdraw their fault grounds, dismissing the fault grounds[,] and allowing the divorce to proceed on the grounds of irreconcilable differences!.] [T]he [o]rder was signed by both parties and the Q]udge in the presence of the parties.
Contemporaneously therewith, the parties did announce their stipulation in the record, [and] a copy of [the] same has been reviewed by the [c]ourt, has been transcribed, and reflects all of the settlement of all issues regarding equitable distribution, child custody, child support, alimony, and all personal property with the only exception being that of household goods[,] which is set out in [p]age 3 of the transcribed settlement statement.
The stipulation was drafted into a [property [settlement [agreement and sent to Samantha’s prior attorney, Carol Ann Bustin, and the [c]ourt, having reviewed the [pjroperty [settlement [a]greement as well as the dictated settlement[,] finds that the only element of the [property [settlement [a]greement which has not been carried out is the portion as it relates to household goods only. That the dictated [p]roperty [settlement [a]greement undertakes to set out the entire agreement with specificity and the [e]ourt finds in the area of the household goods is Samantha was to go to the home and make a list of the items which she wished to have and Les[lie] would review and submit a separate list if he did not agree.
The [c]ourt finds that Samantha went to the house and, pursuant to the attached list submitted to Les[lie], included each and every item in the house. Les[lie] has highlighted those items ... he has agreed to allow her to take.
[O]n or about October 12, 2009, Samantha filed her own pleading where she attempted to withdraw her consent to the divorce and the binding agreement which was transcribed into the record on September 10, 2009.
The [e]ourt finds that the attempted withdrawal, some thirty-two (32) days after the stipulated agreement under oath by the parties, is not sufficient nor will the [c]ourt set aside that which the parties have consented in open [c]ourt; the [c]ourt has relied on the same and the [c]ourt and the parties are bound and will follow that which was dictated in the consent.
The [c]ourt further has. determined it will follow this [c]ourt’s standard procedure and it will not decide the issues of pots and pans as it relates to the parties. [T]he same is impossible to do by a [c]ourt[,] and the same is also not economically feasible....
Therefore, the Court will appoint ... a duly authorized and deputized commissioner of this [c]ourt to sell all household goods located at the home and to convert the same to cash.... [The commissioner] will file a report and request for confirmation of the sale and notice the time of the sale.
*669 Both Samantha and Les[lie] are at liberty to bid on each and every item[,] and ... each and every item will be sold separately!;] • • • then the entire lot will be offered as a whole. [The commissioner] is charged to accept the bid which will bring the most money to the parties. [U]pon completion of the sale, [the commissioner] will report back to the [c]ourt[,] and the [c]ourt will determine at that time an equitable division of the proceeds of the sale.
The [c]ourt finds Samantha Louise Sanford in direct [c]ontempt of [c]ourt [for] her testimony under oath on September 10, 2009, and her subsequent actions thereto. Samantha represented to this [e]ourt her full and complete agreement to the settlement and [that] she would execute the documents when presented to her with the exception of the household goods. She is in contempt of this [c]ourt’s [ojrder through her own testimony under oath, by disavowing her previous sworn statements [as she] has decided that she wants another deal. Additionally, it is obvious [from] her list of all the contents of the house that her list of items under the stipulated agreement was not in good faith [nor was] her attempted withdrawal of her consent, which the [c]ourt finds is contemptuous based upon her sworn testimony of September 10, 2009.
[[Image here]]
The [c]ourt will not enter the judgment of [d]ivorce until the household goods issue has been completely resolved[,] and the [c]ourt has determined what[,] if any[,] attorney’s fees and other sanctions may be appropriate under the circumstances.
¶ 8. On April 7, 2010, Samantha filed a request for an on-the-record finding that the proposed property-settlement agreement was not adequate and sufficient, arguing that her share of the marital estate was inadequate. Leslie filed a response, motion to dismiss, and motion for sanctions.
¶ 9. On May 6, 2010, Leslie filed a second motion for citation for contempt. A hearing was held on May 24, 2010[,] on this motion, and the chancellor adjudicated Samantha in contempt for her failure to sign the property-settlement agreement. In his bench ruling, the chancellor ordered Samantha to be immediately incarcerated until she purged herself of contempt. Under the order, Samantha could purge herself of contempt “by execution of the settlement agreement that was submitted on March 25, 2010, which the [c]ourt has found fully and completely complies with all terms and provisions of the announced agreement on September 10, 2009, to which she indicated her consent and understanding.” On May 25, 2010, Samantha filed a motion for stay of judgment of contempt and determination of supersede-as bond pending her appeal. On May 28, 2010, the Mississippi Supreme Court entered an order on Samantha’s petition for writ of habeas corpus:
The chancellor has apparently found [Samantha] to be in contempt of court for failing to sign a property settlement agreement which she orally agreed to sign in a prior court hearing'. No order of contempt has been entered but [Samantha] is currently being held in the Lamar County jail. [Mississippi Code Annotated section] 93-5-2(2) provides that any settlement of property rights must be “by written agreement!.]” Furthermore, the written agreement must be “found to be adequate and sufficient by the court and included in the judgment of divorce.” Miss.Code Ann. § 93-5-2(3). See also Cassibry v. Cassibry, 742 So.2d 1121 (Miss.1999); Cook v. Cook, 725 So.2d 205 (Miss.1998). After *670 due consideration, the panel finds that although [Samantha] orally agreed to the property settlement, there has been no written agreement as to property rights. [Samantha] was therefore entitled to .withdraw from the oral agreement. The panel finds that the petition should be granted and that [Samantha] should be released. The Sheriff of Lamar County shall immediately release Samantha ... from the Lamar County jail.
¶ 10. On June 1, 2010, the chancery court entered an order on all pending motions filed by Samantha, which incorporated the chancellor’s bench ruling and the transcript of the ruling. On June 29, 2010, Samantha filed a motion for contempt. On August 2, 2010, our supreme court entered an order denying Leslie’s motion to set aside its prior order.
¶ 11. On September 21, 2010, a final judgment of divorce was entered, which reads, in relevant part, as follows:
This matter came on for trial on September 10, 2009. The parties executed and filed with the [c]ourt a [e]onsent wherein they agreed that they would withdraw any and all fault grounds and, in writing, signed by both parties and their attorneys, stated[:] “The designated issues are settled. ■ All issues are settled and will be dictated into the record,” and [the parties will] proceed pursuant to [section] 93-5-2 ... with a divorce on the grounds of irreconcilable differences. Immediately thereafter, the [a]greement was dictated into the record, both parties under oath and represented by their respective counsel.
[[Image here]]
The parties hereto have made a full, adequate, sufficient[,] and complete provision by agreement, as set forth in the transcript attached hereto as Exhibit “A”, for the custody and maintenance of the minor child and for the settlement of any property rights between the parties. Said [a]greement is attached hereto as Exhibit “A” and made a part hereof as if copied in full herein.
The aforesaid [a]greement entered into by and between the parties, attached hereto as Exhibit “A[,]” is hereby ... ratified and approved, and incorporated herein and made a part of this [fjinal [¡Judgment [o]f [djivorce as if copied in full herein; and the parties are hereby ordered to comply with the terms of conditions of said [a]greement.
Based on the [c]onsent to [d]ivorce, this [cjourt signed an [o]rder on September 10, 2009, allowing the parties to withdraw their fault grounds, dismissing the fault grounds!,] and allowing the divorce to proceed on the grounds of irreconcilable differences. The [o]rder was signed by both parties and the undersigned [c]hancellor in the presence of the parties.
Contemporaneously with the withdrawal of fault grounds and consent to divorce, the parties did announce their stipulation into the record, a copy of [the] same has been reviewed by the [c]ourt, has been transcribed, and reflects all of the settlement of all issues regarding equitable distribution, child custody, child support, alimony, and all personal property with the only exception being that of certain household goods as set out in [p]age 3 of the transcribed settlement statement. As a matter of law, divorce agreements dictated into the record and acknowledged by both parties are binding and are to be upheld. Bougard v. Bougard, 991 So.2d 646 (Miss.Ct.App.2008); Cobb v. Cobb, [29 So.3d 145 (Miss.Ct.App.2010) ]....
The stipulation attached hereto was drafted into a [property [settlement [a]greement and sent to Samantha[’s] *671 ... prior attorney ... [,] and the [c]ourt, having reviewed the [property [settlement [a]greement, as well as the dictated settlement finds that the only element of the [property [settlement [ajgreement which has not been carried out is the portion as it relates to household goods only.... [T]he dictated [plroperty Settlement [ajgreement undertakes to set out the entire agreement with specificity[,] and the [c]ourt finds in the area of the household goods that Samantha ... was to go to the home and make a list of the items which she wished to have and Les[lie] would review and submit a separate list if he did not agree.
The [c]ourt finds that pursuant to the sworn testimony of Samantha ... in open court on May 24, 2010, the issue of remaining personal property distribution is now moot by virtue of Samantha[’s] ... testimony that she would receive certain items of pre-marital and marital property....
On or about October 12, 2009, Samantha ... filed her own pleading where she attempted to withdraw her consent to the divorce and the binding agreement which was transcribed. The [e]ourt finds that the attempted withdrawal, some thirty-two (32) days after the stipulated agreement under oath by the parties, is not sufficient[,] nor will the [e]ourt set aside that which the parties have consented to in open [c]ourt; the [c]ourt has relied on the same[,] and the [c]ourt and the parties are bound [by] and will follow that which was dictated in the record. [Bougard, 991 So.2d 646; Cobb, 29 So.3d 145.]
[[Image here]]
The [c]ourt finds as a matter of fact and law that Samantha ... is in direct, deliberate[,] and willful contempt of [c]ourt as it applies to her testimony under oath on September 10, 2009, and her subsequent actions thereto. Samantha ... represented to this [c]ourt her full and complete agreement to the settlement and that she would execute the documents when presented to her with the exception of the household goods. She is in contempt of this [c]ourt’s [o]rder through her own testimony under oath, by disavowing her previous sworn statements and ... not [acting] in good faith.
¶ 12. The court reporter’s transcript was attached to the final judgment of divorce and was incorporated as the parties’ property-settlement agreement. Neither party’s signature appears anywhere on the transcript, and no written property-settlement agreement was ever signed or filed by the parties.
¶ 13. Samantha appeals the chancery court’s entry of the judgment of divorce. Upon review, we find that the court erred in entering a judgment of divorce because the distribution of household goods remained unresolved; there is no written property settlement agreement; and merely attaching a court reporter’s transcript to the judgment of divorce is insufficient. Therefore, we reverse the judgment of divorce and remand this case to the chancery court for proceedings consistent with this opinion.
DISCUSSION
¶ 14. Our standard of review in domestic relations cases is well-established. “This Court will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Dupre v. Dupre, 71 So.3d 1226, 1228 (¶ 11) (Miss.Ct.App.2011) (citing Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss.2002)). “Legal ques *672 tions are reviewed de novo.” Id. (citing Russell v. Performance Toyota, Inc., 826 So.2d 719, 721 (¶ 5) (Miss.2002)).
¶ 15. The issue presented for our review is whether the chancellor had the authority to enter a divorce based on irreconcilable differences with only a transcript of the parties’ oral agreement attached to the judgment of divorce and without a written property-settlement agreement disposing of all property issues. In Mississippi, “divorce is a creature of statute; it is not a gift to be bestowed by the chancellor based upon a perception that declining to grant the divorce will not restore the couple to a harmonious marital relationship.” Cassibry, 742 So.2d at 1124 (¶ 7) (quoting Kergosien v. Kergosien, 471 So.2d 1206, 1210 (Miss.1985)). Divorce “is a statutory act and the statutes must be strictly followed[.]” Id. The statute governing irreconcilable-differences divorces provides, in pertinent part:
(2) If the parties provide by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties and the court finds that such provisions are adequate and sufficient, the agreement may be incorporated in the judgment, and such judgment may be modified as other judgments for divorce.
(3) If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. Such consent must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such consent, and that the parties understand that the decision of the court shall be a binding and lawful judgment. Such consent may not be withdrawn by a party without leave of the court after the court has commenced any proceeding, including the hearing of any motion or other matter pertaining thereto. The failure or refusal of either party to agree as to adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between the parties, or any portion of such issues, or the failure or refusal of any party to consent to permit the court to decide such issues, shall not be used as evidence, or in any manner, against such party. No divorce shall be granted pursuant to this subsection until all matters involving custody and maintenance of any child of that marriage and property rights between the parties raised by the pleadings have been either adjudicated by the court or agreed upon by the parties and found to be adequate and sufficient by the court and included in the judgment of divorce. Appeals from any orders and judgments rendered pursuant to this subsection may be had as in other cases in chancery court only insofar as such orders and judgments relate to issues that the parties consented to have decided by the court.
[[Image here]]
(5) Except as otherwise provided in subsection (3) of this section, no divorce shall be granted on the ground of irreconcilable differences where there has been a contest or denial; provided, however, that a divorce may be granted on the ground of irreconcilable differences where there has been a contest or denial, if the contest or denial has been withdrawn or cancelled by the party fil *673 ing same by leave and order of the court.
Miss.Code Ann. § 93-5-2(2)-(3), (5) (Supp. 2011) (emphasis added). Under this statute, there are two routes under which a divorce may be obtained on the ground of irreconcilable differences. First, the parties may provide a written agreement settling all property rights between the parties to the court, which must be found adequate and sufficient by the court and incorporated into the judgment of divorce. Miss.Code Ann. § 93-5-2(2). Alternatively, if the parties cannot reach an agreement, the parties may consent in writing to the divorce itself and submit the issues on which the parties cannot agree to the court. Miss.Code Ann. § 93-5-2(3). Here, the parties filed a consent to divorce on the ground of irreconcilable differences, which stated “all issues are settled.” Therefore, the parties were required to provide a written agreement under section 93-5-2(2).
¶ 16. In Cassibry, 742 So.2d at 1122 (¶ 1), the wife appealed the chancellor’s grant of divorce on the ground of irreconcilable differences. Although there was an oral agreement between the parties, no written settlement agreement existed. Id. The issue presented was “whether the chancellor had the statutory authority to enter a divorce based on irreconcilable differences when no written settlement agreement had been signed and entered into the record by the parties” and “[o]nly a transcription of an oral agreement by the parties was placed into the record as authorized by the lower court.” Id. at 1123-24 (¶ 7). The husband’s attorney read the agreement into the record, and both parties verbally acknowledged their understanding of the agreement. Id. at 1124-25 (¶ 11). On appeal, our supreme court noted:
Although it appears that both parties were in agreement to the settlement agreement, no written, executed consent agreement was accomplished prior to or after the granting of a divorce on the grounds of irreconcilable differences. The chancellor should have recessed and required the parties to execute and file the written agreement prior to the additional proceedings. ..
Id. at 1125 (¶ 12). The supreme court continued:
Giving a strict interpretation to [section] 93-5-2(2), the statute provides that the parties provide a written agreement and that the court finds that such provisions are adequate and sufficient. After the reading of the agreement into the record, the chancellor found that the agreement was reasonable and granted a divorce based on irreconcilable differences without a written consent agreement being executed and filed. Because the statutory requirements were not met in this case, the chancellor exceeded his statutory authority in awarding a divorce upon grounds of irreconcilable differences.
Id. at (¶ 14). Thus, without a written agreement in accordance with our irreconcilable-differences-divorce statute, the chancellor was without authority to grant a divorce. Therefore, the supreme court reversed the judgment of divorce and remanded the case. Id. at 1126 (¶ 17).
¶ 17. Similarly, in Cook, 725 So.2d at 207 (¶ 8), the supreme court reversed a judgment of divorce where there was no written consent agreement, but only an oral agreement dictated into the record. Our supreme court held that “nothing in [section] 93-5-2 or the case law interpreting the statute indieat[es] that an oral agreement by the parties is sufficient to satisfy its requirements. To the contrary, the plain language of the statute dictates *674 that the consent agreement be written and signed by both parties.” Id. at (¶ 7).
¶ 18. Likewise, in Joiner v. Joiner, 739 So.2d 1043, 1044 (¶ 3) (Miss.Ct.App.1999), counsel for both parties orally announced to the court that they had settled all issues. Later, the wife’ refused to sign a property-settlement agreement, but the chancellor incorporated each attorney’s notes of the alleged settlement into the judgment of divorce after finding the notes were adequate and sufficient. Id. at (¶¶ 4-5). On appeal, this Court held:
The frustration of the chancellor with Mrs. Joiner’s apparently obstinate behavior is an understandable reaction in these circumstances, but there is no provision in the law that would permit the chancellor to relieve his frustration by granting the divorce in the absence of the statutorily-mandated “written agreement for the custody and maintenance of any children of the marriage and for the settlement of any property rights between the parties.”
Id. at 1046 (¶ 14). Because there was no written property agreement, we reversed the judgment of divorce. Id. at (¶ 15).
¶ 19. In the instant case, the chancery court relied upon Bougard, 991 So.2d 646, and Cobb, 29 So.3d 145. Cobb is distinguishable because the parties in Cobb actually executed a written agreement. Id. at 149 (¶¶ 12-13). No written, agreement was ever executed in the case before us.
¶ 20. In Bougard, 991 So.2d at 650 (¶ 21), the husband appealed the parties’ divorce because no written agreement was ever prepared or signed by the parties. The parties orally resolved all issues of property division. Id. at 648 (¶ 10). Further, the parties had their agreement read in open court and agreed it would be binding even if they did not sign a written agreement. Id. This Court held that the parties had entered into a binding agreement. Id. at 650 (¶ 21). Bougard is distinguishable from the case before us because the parties in Bougard had an agreement covering all items of property division. In the instant case, the oral agreement covered everything except the division of personal property. Despite an incomplete agreement, the chancellor told the parties that they would not be at liberty to back out of the oral agreement as dictated into the record. Under section 93-5-2(3), “[n]o divorce shall be granted ... until all matters involving ... property rights between the parties raised by the pleadings have been either adjudicated by the court or agreed upon by the parties and found to be adequate and sufficient by the court and included in the judgment of divorce.” (Emphasis added). Therefore, the chancellor abused his discretion in binding the parties to an oral agreement that did not dispose of all property matters between the parties.
¶21. In addition, the parties filed a consent to divorce stating that “all issues are settled.” In fact, not all issues’were settled because the division of household goods was unresolved at that time. Nevertheless, because the parties were not submitting issues for the chancellor’s consideration under section 93-5-2(3), subsection (3) was not applicable. Instead, subsection (2) of section 93-5-2 applied, which required- a “written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties[.]” There is simply no written agreement between the parties resolving all property, custody, and support issues as required under section 93-5-2(2). Therefore, we are compelled to reverse the judgment of divorce and remand the case for further proceedings.
¶ 22. THE JUDGMENT OF THE LAMAR COUNTY CHANCERY COURT IS *675 REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTED WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. FAIR, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BARNES AND CARLTON, JJ.