ON WRIT OF CERTIORARI

PIERCE, Justice,
for the Court:
¶ 1. It is often, said that bad facts make bad law — but inattention to detail also can make bad law. There are two distinct paths to an irreconcilable-differences divorce under Mississippi law. One option is for the couple to provide a written agreement settling the custody and maintenance of any children of the marriage and property rights; if the chancellor deems the terms adequate and sufficient, he or she may incorporate the agreement in the judgment and grant a divorce. Miss.Code Ann. § 93-5-2(2) (Rev.2013). A second option is for the couple to consent to allow a chancellor to decide certain disputed issues. Miss.Code Ann. § 93-5-2(3) (Rev. 2013). The consent must: (1) be in a writing signed by both parties; (2) state that the couple voluntarily agrees to permit the chancellor to decide the issues designated in their written consent; and (3) state that the parties understand that the chancellor’s decision will be binding and lawful. Id. All matters involving the custody and maintenance of any children of the marriage and property rights must then be either adjudicated by the chancellor or agreed upon by the parties and deemed adequate and sufficient before a divorce can be granted. Id.
¶ 2. Every divorce based on irreconcilable differences must proceed under either Section 93-5-2(2) or Section 93-5-2(3), but not both. In this case, the two distinct subsections were conflated and confused. The parties attempted to “switch horses” in the middle of a volatile stream not once, but multiple times. Ultimately, they failed to saddle either horse successfully; hence, they are being swept back into chancery court.
FACTS AND PROCEDURAL HISTORY
¶ 3. The facts below were drawn heavily from the Court of Appeals’ decision. San *649 ford v. Sanford, 124 So.3d 664 (Miss.Ct.App.2012).
¶ 4. On January 28, 2008, Samantha Sanford filed a complaint for divorce and temporary relief against Leslie Sanford in the Chancery Court of Lamar County. Samantha asserted that her and Leslie’s marriage was “irretrievably destroyed.” As fault grounds, she cited Leslie’s habitual cruel and inhuman treatment of her, his habitual and excessive drug use, and his habitual drunkenness. Alternatively, she alleged irreconcilable differences. And in her request for relief, she sought custody of their minor child.
¶ 5. On June 19, 2008, the chancellor entered a temporary order granting Samantha temporary physical custody of the minor child, temporary child support, and temporary alimony. Leslie was granted temporary visitation. Trial eventually was set for September 10, 2009.
¶ 6. Several events occurred on the day of trial. First, as permitted under Section 93-5-2(3), Samantha and Leslie executed a joint motion to withdraw fault grounds and a consent to divorce. Consequently, the chancellor signed an order dismissing fault grounds so the Sanfords could proceed with a divorce on the ground of irreconcilable differences. In their consent to divorce, they agreed to permit the chancellor to decide several designated issues. But before filing their consent, they struck through those designated issues; underneath, either Leslie or Samantha or one of their attorneys wrote that “[a]ll issues are settled and will be dictated into the record.” At that point, the Sanfords sought to travel under Section 93-5-2(2), not (3).
¶ 7. Later, after court was called to order, Leslie stated that the parties had settled. Still, he noted that the chancellor might have to decide the division of household goods, which is impermissible under Section 93-5-2(2). As the proceedings continued, it is clear from the record'that the Sanfords once again began invoking the provisions of Section 93-5-2(3). Disagreements arose about tax-related issues and whether Leslie would have to pay child support during the summers. Their back-and-forth finally prompted the chancellor to ask, “Well, have y’all got an agreement or not?” In response, Samantha said that she would submit the issue of summer child support to the chancellor for his consideration. At that point, understandably frustrated, the chancellor recessed for lunch: “I’m going to lunch. I’ll be back at 2:00. Get ready to go to trial. We’ll hear everything you want to hear.”
¶ 8. Following the noon recess, the San-fords announced a settlement. The chancellor and the Sanfords’ attorneys read the settlement agreement into the record, and Samantha and Leslie agreed to be bound by it:
THE COURT: All right. Mr. Sanford you stood there and heard what was dictated by your attorney and concurred in by Mrs. Sanford’s attorney as a proposed agreement between you and her for the settlement of all issues. Did you hear all of it?
MR SANFORD: Yes, sir, I did.
THE COURT: Did you understand all of that?
MR. SANFORD: Yes, sir, I did.
THE COURT: Is that a correct statement of your agreement?
MR. SANFORD: Yes, sir.
THE COURT: It will be reduced to writing. Do you commit to the Court that when it is reduced to writing you will sign it—
MR. SANFORD: Yes, sir.
THE COURT: — as an agreement?
MR. SANFORD: Yes, sir.
*650 THE COURT: Do you understand that having made that commitment that you are not at liberty to back out?
MR. SANFORD: I understand, sir.
THE COURT: An effort to back out may result in imposition of sanctions.
MR. SANFORD: Yes, sir.
THE COURT: Mrs. Sanford, you stood there while it was being dictated by [Leslie’s attorney] and with some additions by your attorney. Did you hear all of it?
MRS. SANFORD: Yes, sir.
THE COURT: Did you understand all of it?
MRS. SANFORD: Yes, sir.
THE COURT: Is that your agreement and commitment?
MRS. SANFORD: Yes, sir.
THE COURT: Do you understand and commit to the Court that when it is reduced to writing and submitted to you for signature that you will sign it?
MRS. SANFORD: Yes, sir.
THE COURT: You do not have the privilege of backing out or changing your mind.
MRS. SANFORD: Yes, sir.
THE COURT: If you do so, you may subject yourself to imposition of sanctions by the Court.
MRS. SANFORD: Yes, sir.
THE COURT: All right. On those assurances and what’s dictated, I will be pleased to approve it. It is approved and is the order of the Court as of now. It will be reduced to writing and signed by the parties.
¶ 9. One issue remained unresolved, however: the division of household goods. The plan was for Samantha to go through the couple’s home and make a list of items that she wished to keep. Leslie, in turn, was to review Samantha’s list and submit his own list if he disagreed. The parties represented in court that the division of household goods “may be one thing which is left that the [c]ourt can make a determination on one day.”
¶ 10. One month after the divorce hearing, on October 12, 2009, Samantha moved to withdraw her consent to divorce and to have the case tried. Leslie responded by moving for a contempt citation and to enforce their settlement agreement. He alleged that Samantha had inventoried the home and had listed its entire contents for herself. He argued that her actions violated the chancellor’s order and the parties’ agreement. Further, he asserted that Samantha had waived any right to withdraw her consent to the settlement agreement.
¶ 11. On December 2, 2009, the chancellor entered an order refusing to allow Samantha to withdraw her consent from the September 10, 2009, settlement agreement. Further, he appointed a commissioner to supervise a bidding process between Samantha and Leslie for the household goods and found Samantha to be in direct contempt of court.
¶ 12. On April 7, 2010, Samantha requested an on-the-record finding that the settlement agreement was inadequate and insufficient. Leslie responded by moving to dismiss and for sanctions. A short time later, he moved again to have Samantha cited for contempt.
¶ 13. At a hearing on May 24, 2010, the chancellor found Samantha in contempt for failing to sign the settlement agreement. In his bench ruling, he ordered that Samantha be incarcerated until she purged herself of contempt “by executing] ... the settlement agreement that was submitted *651 on March 25, 2010, which the [e]ourt has found fully and completely complies with all terms and provisions of the announced agreement on September 10, 2009, to which she indicated her consent and understanding.”
¶ 14. The following day, Samantha moved to stay the judgment of contempt and for a determination of supersedeas bond pending her appeal. Days later, she filed a Petition for Writ of Habeas Corpus with this Court. On May 28, 2010, a panel of this Court granted Samantha’s petition and ordered that she be released immediately from the Lamar County jail.
¶ 15. On June 1, 2010, the chancellor entered an order on all pending motions filed by Samantha and incorporated his bench ruling and the transcript of the May 24, 2010, hearing as part of the order.
¶ 16. Two weeks later, on June 16, 2010, Samantha moved to have the chancellor recused from the case. She noticed a hearing on her recusal motion for July 21, 2010. And, on June 29, 2010, she moved to have Leslie cited for contempt, alleging that he had not paid his alimony obligations.
¶ 17. On September 21, 2010, a final judgment of divorce was entered. The final judgment stated, in part, that:
This matter came on for trial on September 10, 2009. The parties executed and filed with the [cjourt a[c]onsent wherein they agreed that they would withdraw any and all fault grounds and, in writing, signed by both parties and their attorneys, stated[:] “The designated issues are settled. All issues are settled and will be dictated into the record,” and [the parties will] proceed pursuant to [Section] 93-5-2 ... with a divorce on the grounds of irreconcilable differences. Immediately thereafter, the [a]greement was dictated into the record, both parties under oath and represented by their respective counsel.
[[Image here]]
The parties hereto have made a full, adequate, sufficient[,] and complete provision by agreement, as set forth in the transcript attached hereto as Exhibit “A”, for the custody and maintenance of the minor child and for the settlement of any property rights between the parties. Said [a]greement is attached hereto as Exhibit “A” and made a part hereof as if copied in full herein.
The aforesaid [a]greement entered into by and between the parties, attached hereto as Exhibit “A[,]” is hereby ... ratified and approved, and incorporated herein and made a part of this [f]inal judgment [o]f [d]ivorce as if copied in full herein; and the parties are hereby ordered to comply with the terms of conditions of said [a]greement.
Based on the [c]onsent to [d]ivorce, this [e]ourt signed an [o]rder on September 10, 2009, allowing the parties to withdraw their fault grounds, dismissing the fault grounds[,] and allowing the divorce to proceed on the grounds of irreconcilable differences. The [o]rder was signed by both parties and the undersigned [c]hancellor in the presence of the parties.
Contemporaneously with the withdrawal of fault grounds and consent to divorce, the parties did announce their stipulation into the record, a copy of [the] same has been reviewed by the [c]ourt, has been transcribed, and reflects all of the settlement of all issues regarding equitable distribution, child custody, child support, alimony, and all personal property with the only exception being that of certain household goods as set out in [p]age 3 of the transcribed settlement statement. As a matter of law, divorce agreements dictated into the record and *652 acknowledged by both parties are binding and are to be upheld. Bougard v. Bougard, 991 So.2d 646 (Miss.Ct.App.2008); Cobb v. Cobb, [29 So.3d 145 (Miss.Ct.App.2010) ]....
The stipulation attached hereto was drafted into a[p]roperty [settlement [a]greement and sent to Samantha[’s] ... prior attorney ... and the [c]ourt, having reviewed the [property [settlement [a]greement, as well as the dictated settlement finds ■ that the only element of the [p]roperty [settlement [a]greement which has not been carried out is the portion as it relates to household goods only.... [T]he dictated [property [settlement [agreement undertakes to set out the entire agreement with specifieity[,] and the [c]ourt finds in the area of the household goods that Samantha. ... was to go to the home and make a list of the items which she wished to have and Les[lie] would review and submit a separate list if he did not agree. '
The [c]ourt finds that pursuant to the sworn testimony of Samantha ... in open court on May 24, 2010, the issue of remaining personal property distribution is now moot by virtue of Samantha[’s] ... testimony that she would receive certain items of pre-marital and marital property....
On or about October 12, 2009, Samantha ... filed her own pleading where she attempted to withdraw her consent-to the divorce and the binding agreement which was transcribed. The [c]ourt finds that the attempted withdrawal, some thirty-two (82) days after the stipulated agreement under oath by the parties, is not sufficient^] nor will the [cjourt set aside that which the parties have consented to in open [c]ourt; the [c]ourt has relied on the same[,] and the [c]ourt and the parties are bound [by] and will follow that which was dictated in the record. [Bougard, 991 So.2d 646; Cobb, 29 So.3d 145.]
[[Image here]]
The [c]ourt finds as a matter of fact and law that Samantha ... is in direct, deliberate[,] and willful contempt of [c]ourt as it applies to her testimony under oath on September 10, 2009, and her subsequent actions thereto. Samantha ... represented to this [c]ourt her full and complete agreement to the settlement and that she would execute the documents when presented to her with the exception of the household goods. She is in contempt of this [c]ourt’s [o]rder through her own testimony under oath, by disavowing her previous sworn statements and ... not [acting] in good faith.
¶ 18. The transcript of .the September 10, 2009, hearing was incorporated in and attached to the final judgment of divorce.
¶ 19. Samantha appealed the final judgment to this Court, and we assigned the case to the Court of Appeals. The Court of Appeals reversed the judgment of divorce and remanded the case. Sanford v. Sanford, 124 So.3d 664 (Miss.Ct.App.2012). It held that the chancellor erred in granting a final divorce because the Sanfords had not entered into a signed written agreement resolving all property, custody, and support issues as required under Section 93-5-2(2) of the Mississippi Code. Id. at 671-74.
¶ 20. We granted Leslie’s petition for a writ of certiorari.
DISCUSSION
¶ 21. We will not disturb a chancellor’s findings unless they are “ ‘manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.’ ” Smith v. Smith, 20 So.3d 670, 674 (Miss.2009) (quoting Evans v. Evans, 994 So.2d 765, 768 (Miss.2008)). Legal questions, *653 however, are reviewed de novo. Shelnut v. Dep’t of Human Servs., 9 So.3d 359, 363 (Miss.2009) (quoting Wilburn v. Wilburn, 991 So.2d 1185, 1190 (Miss.2008)).
Whether the chancellor erred in granting a divorce based on irreconcilable differences.
¶ 22. As discussed already, a couple can obtain an irreconcilable-differences divorce in one of two ways. Section 93-5-2(2) states that:
If the parties provide by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties and the court finds that such provisions are adequate and sufficient, the agreement may be incorporated in the judgment, and such judgment may be modified as other judgments for divorce.
Miss.Code Ann. § 93-5-2(2) (Rev.2013). Alternatively, Section 93-5-2(3) provides that:
If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. Such consent must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such.consent, and that the parties understand that the decision of the court shall be a binding and lawful judgment. Such consent may not be withdrawn by a party without leave of the court after the court has commenced any proceeding, including the hearing of any motion or other matter pertaining thereto. The failure or refusal of either party to agree as to adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between the parties, or any portion of such issues, or the failure or refusal of any party to consent to permit the court to decide such issues, shall not be used as evidence, or in any manner, against such party. No divorce shall be granted pursuant to this subsection until all matters involving custody and maintenance of any .child of that marriage and property rights between the parties raised by the pleadings have been either adjudicated by the court or agreed upon by the parties and found to be adequate and sufficient by the court and included in the judgment of divorce....
Miss.Code Ann. § 93-5-2(3) (Rev.2013).
¶ 23. Here, Samantha and Leslie Sanford wavered between Sections 93-5-2(2) and 93-5-2(3). They began under Section 93-5-2(3) by signing a written consent agreement. But, on the morning of trial, they reached a tentative settlement, marked through their designated issues, and handwrote underneath: “All issues are settled and will be dictated into the record.” By filing a document with these representations, they abandoned 93-5-2(3): there was no longer a written, signed consent agreement designating certain issues for the chancellor to decide. Instead, they declared that they had settled everything and attempted to proceed under Section 93-5-2(2).
¶ 24. All was not settled, however.
¶ 25. The Sanfords continued to dispute certain issues, particularly the division of household goods. As a result, they contemplated returning to Section 93-5-2(3). Yet, after a noon recess, they confirmed a settlement,. dictated the terms of the settlement into the record, and affirmed that *654 they understood the terms and agreed to be bound by them. Even then, though, all still was not settled. The division of household goods remained unresolved. For example, as they were dictating the terms of the settlement into .the record, the parties said that the chancellor might have to weigh in on that particular issue. And, sure enough, eventually he did.
¶26. In sum then, the parties never fully complied with either Section 93-5-2(2) or Section 93-5-2(3). The written, signed consent agreement they filed was insufficient because it did not specifically set forth any issues for the chancellor to decide. And the purported settlement that was dictated, transcribed, and included in the judgment of divorce did not settle all property rights, because the division of household goods remained unresolved.
¶ 27. Thus, we agree with the Court of Appeals that the judgment should be reversed and the case remanded. Section 93-5-2(2) is designed to allow divorcing parties to completely agree and settle all issues touching the marriage. The parties must fully agree on all issues. That did not happen here prior to Samantha withdrawing her consent.
CONCLUSION
¶ 28. Because the requirements of neither Section 93-5-2(2) nor Section 93-5-2(3) were completely met here, we affirm the judgment of the Court of Appeals, reverse the judgment of the Chancery Court of Lamar County, and remand the case for further proceedings consistent with this opinion.
¶ 29. THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE LAMAR COUNTY CHANCERY COURT IS REVERSED AND THE CASE IS REMANDED.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ„ CONCUR.