# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-00063-SCT

*IN THE MATTER OF THE DISSOLUTION OF
THE MARRIAGE OF JAMES ALBERT HANLIN
AND MELANIE D. HANLIN: JAMES ALBERT
HANLIN*

*v.*

*MELANIE D. HANLIN*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/27/2012 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| TRIAL COURT ATTORNEYS: | SAMUEL M. BRAND, JR. |
| | BRADLEY M. GLAZE |
| COURT FROM WHICH APPEALED: | CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | SAGE EGGER HARLESS |
| | DAVID NEIL MCCARTY |
| | SAMUEL M. BRAND, JR. |
| ATTORNEY FOR APPELLEE: | BRADLEY MICHAEL GLAZE |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND RENDERED - 05/21/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     James and Melanie Hanlin obtained a divorce on the basis of irreconcilable differences in 2007 and entered into a property settlement agreement, a term of which required that James maintain military healthcare coverage "allowable by statute" for Melanie. After the divorce, Melanie incurred significant medical expenses, which James's insurer

initially paid. In 2009, however, Melanie learned that she had not been covered. She was sued for her unpaid medical bills. In response to a contempt petition filed by James in 2012, which later was withdrawn, Melanie filed a counter petition against James, arguing that he had failed to maintain coverage in accordance with the terms of the property settlement agreement. The chancellor found that each party was obligated to pay half of Melanie's medical expenses. The Court of Appeals affirmed. Having granted James's petition for writ of *certiorari*, we now reverse and render.

## FACTS AND PROCEDURAL HISTORY

¶2. James and Melanie Hanlin married on October 15, 1988. On November 14, 2007, the Chancery Court of the First Judicial District of Hinds County granted the couple an irreconcilable differences divorce. The next day, November 15, 2007, James and Melanie executed a property settlement agreement (PSA),[1] which required, in pertinent part, that James "maintain in full force and effect the insurance benefits *that are allowable by statute* to the divorced spouse of a retired military person." (Emphasis added.) Melanie testified that

---

[1]It is anomalous that the judgment of divorce was signed November 14, 2007, though the PSA was not signed until November 15, 2007. At the time the judgment of divorce was signed on November 14, 2007, the division of property "remained unresolved." *Sanford v. Sanford*, 124 So. 3d 647, 654 (Miss. 2013). In *Sanford*, this Court held, "Section 93-5-2(2) [(Rev. 2013)] is designed to allow divorcing parties to completely agree and settle all issues touching the marriage. The parties must fully agree on *all* issues." *Id.* Here, the judgment stated that the "Property Settlement Agreement entered into by and between the parties is approved, and . . . is made a part of this Judgment of Divorce, as if copied in full words and figures herein, and both parties . . . are hereby ordered and directed to abide and perform all of the terms and provisions thereof." But the PSA to which the judgment referred was not signed until the next day, November 15, 2007. This seems to have been cured, however, by the fact that both documents were entered in the Office of the Chancery Clerk of the First Judicial District of Hinds County on the same day, November 15, 2007.

she believed, on the basis of the divorce negotiations, that she was covered for an additional year after the divorce under James's military heath insurance plan, known as Tricare. For that reason and because Tricare provided "much better coverage," she waived the coverage at her place of employment.

¶3.    In 2008, Melanie had a "frozen shoulder," which had to be repaired by means of a surgical procedure and followed by "several, several weeks of therapy." Additionally, she "had a disc that had to be . . . fused" and completed therapy associated with that procedure. While Tricare preapproved the procedures and paid initial medical bills, Melanie learned in 2009 from the Department of Defense that the Tricare coverage she thought she had was not in effect, and in fact had ended on the date of her divorce from James, November 14, 2007. Because Melanie did not pay the medical bills which Tricare had declined to pay, Healthcare Financial Services, an affiliate of Baptist Hospital, sued Melanie to collect the outstanding balance, totaling $27,305.50.

¶4.    In April 2012, James filed a motion to enforce the terms of the PSA. Specifically, he claimed that Melanie had not complied with the PSA's requirement that the marital domicile be refinanced or sold upon emancipation of their minor child. Melanie filed a counter petition seeking, *inter alia*, to hold James in contempt for failure to "maintain health insurance coverage as required by the Court's judgment." While James voluntarily withdrew his motion to enforce the PSA, Melanie's petition to hold James in contempt was set for a hearing on September 27, 2012.

¶5. The chancellor found that Melanie was not covered under 10 U.S.C. § 1072 (2012), but that "it was the intent at least on the parties' part when they signed the contract that [Melanie] would be covered and neither lawyer checked this out, which they probably should have done, to determine if this was true or not." The chancellor found that both James and Melanie "are equally and totally responsible for any payment" of Melanie's outstanding medical bills. It was not until December 12, 2012, that the chancellor memorialized his *ore tenus* ruling in a written judgment, entered *nunc pro tunc* to the date of the hearing, September 27, 2012. James timely filed a notice of appeal in this Court, and the case was assigned to the Mississippi Court of Appeals.

¶6. The Court of Appeals unanimously affirmed the chancellor's judgment, reasoning that under 10 U.S.C. "section 1078a(a), Melanie was entitled to health-care coverage for at least one year." ***Hanlin v. Hanlin***, 2014 WL 2723884, *2 (Miss. Ct. App. 2014), *cert. granted*, 2013-CT-00063-SCT (Miss. Feb. 12, 2015). We granted James's petition for writ of *certiorari* to consider whether Melanie's claims were procedurally barred under the doctrines of estoppel and *res judicata* and to revisit whether the plain terms of the PSA were disregarded by the chancery court.

## STANDARD OF REVIEW

¶7. "We employ a limited standard of review in domestic relations cases." ***In re Dissolution of Marriage of Wood***, 35 So. 3d 507, 512 (Miss. 2010). Generally, "[t]his Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous

4

legal standard was applied." *Id.* (quoting *Duncan v. Duncan*, 774 So. 2d 418, 419 (Miss. 2000) (citing *Kilpatrick v. Kilpatrick*, 732 So. 2d 876, 880 (Miss. 1999))). However, "[w]hile a chancellor's decisions in a divorce action are reviewed for manifest error, a property settlement agreement is a contract, and contract interpretation is a question of law, which is reviewed de novo." *McFarland v. McFarland*, 105 So. 3d 1111, 1118 (Miss. 2013) (citing *Harris v. Harris*, 988 So. 2d 376, 378 (Miss. 2008)).

## ANALYSIS

### I. Estoppel and *Res Judicata*

¶8. James contends in his petition for writ of certiorari that "Melanie was fully aware that Tricare had denied her coverage when she filed her earlier contempt petition in 2010" and that "she waited until she was sued for unpaid bills to seek redress." The Court of Appeals addressed only James's argument that Melanie's claims were barred by the statute of limitations, finding that James had failed properly to preserve the issue for appeal in the chancery court. But it is clear from the record that the question of whether estoppel and *res judicata* operated to bar Melanie's claims, in fact, had been raised in the chancery court and was raised on appeal.

¶9. Counsel for James stated, in an *ore tenus* motion for directed verdict, which the chancery court denied, that "[Melanie] is estopped from bringing this action. One, it is res judicata, because she knew in 2009 that it [her medical bill] wasn't paid and she didn't bring it until 2010." Further, James's counsel stated "also estoppel applies here. [Melanie] has known since—actually, since 2008 that the bills weren't being paid. My client gets hit with

5

it in this contempt [action]." It is abundantly clear that James properly preserved the defenses of estoppel and *res judicata* for appeal.

¶10.    In *Clements v. Young*, this Court considered whether a former spouse could be obligated to pay medical expenses incurred prior to the entry of a contempt/modification decree on September 12, 1978. *Clements v. Young*, 481 So. 2d 263, 270 (Miss. 1985). Pursuant to that decree, the chancery court had "reduced Clements' monthly child support obligations from $465.00 to $350.00," but was not presented with "the matter of medical or dental bills." *Id.* Therefore, this Court held that "[i]f there was a problem about medical or dental bills prior to September, 1978, the matter could and should have been litigated then. The decree of September 12, 1978, is res judicata with respect to all claims that were presented or may reasonabl[y] have been presented at that time." *Id.* (citing *Dunaway v. W.H. Hopper & Assocs., Inc.*, 422 So. 2d 749, 751 (Miss. 1982); *Golden v. Golden*, 246 Miss. 562, 568, 151 So. 2d 598, 600 (1963) ("[A] prior suit is conclusive in a subsequent suit not only of matters actually determined but also matters which could and should have been determined in the prior suit.")).

¶11.    The Court of Appeals likewise addressed a case in which one "Ms. Russell failed to produce . . . medical bills in a timely fashion" and instead waited "four years to seek payment." *Russell v. Russell*, 724 So. 2d 1061, 1065 (Miss. Ct. App. 1998). Though she had failed to do so in earlier proceedings, Ms. Russell later requested $575 in medical expenses which had been incurred prior to and after her divorce from Mr. Russell. *Id.* Citing "two earlier judgments and one order which was entered, at least one of which resulted from a

contempt proceeding concerning dental expenses," Mr. Russell claimed that those previous judgments operated to bar Ms. Russell's claim for $575, because she could have requested that money at an earlier proceeding. *Id.* The Court of Appeals, applying *Clements*, reversed and rendered the chancellor's award of $575 to Ms. Russell. *Id.*

¶12.    In the present case, Melanie had filed in the chancery court a petition for modification and contempt against James in September 2010 in which she obtained a judgment against him. The argument presented on appeal and in James's petition for writ of *certiorari* is that because Melanie was aware that Tricare was denying coverage at that time, on the basis of *Clements*, any claims regarding payments she could have raised at that time and failed to assert were barred under the doctrine of *res judicata*. Melanie testified that she knew in 2009 that, while Tricare initially paid a bill, that it was retracting what it had paid. But, instead of communicating with Tricare or James about this problem, Melanie contacted only her medical providers regarding why the bills were not being paid. She testified that "[w]e still did not know what the problem was" at the time she brought the 2010 contempt action. However, it is clear that Melanie did not bring her contempt action until May 2012, less than one month after having been sued in April 2012 by Healthcare Financial on the outstanding medical bills.

¶13.    Because those "could and should have been litigated" during the prior proceedings, at which time Melanie was aware that her health insurance provider was not paying her medical bills, Melanie's contempt claims are *res judicata* with respect to the claims for

7

medical expenses which could have been sought in the 2010 proceeding. ***Clements***, 481 So. 2d at 270.

## II.    Plain Language of the Property Settlement Agreement (PSA)

¶14.    James argues in his petition for writ of *certiorari* that the chancery court ignored the plain language of the PSA, which provided that: "The Husband agrees to maintain in full force and effect the insurance benefits that are allowable by statute to the divorced spouse of a retired military person."

¶15.    In his *ore tenus* bench ruling, the chancellor found, under Title 10, Section 1072, that Melanie was not eligible for coverage. The chancellor ultimately adjudicated that, because both parties believed that Melanie was covered, each of them would bear half the cost of her medical expenses. Section 1072(2)(F) defines a "dependent" in the following manner:

> [T]he unremarried former spouse of a member or former member who (i) on the date of the final decree of divorce, dissolution, or annulment, had been married to the member or former member for a period of at least 20 years during which period the member or former member performed at least 20 years of service which is creditable in determining that member's or former member's eligibility for retired or retainer pay, or equivalent pay, and (ii) does not have medical coverage under an employer-sponsored health plan . . . .

10 U.S.C. § 1072(2)(F) (2012). Likewise, Section 1072(2)(G) defines "dependent" as follows:

> [A] person who (i) is the unremarried former spouse of a member or former member who performed at least 20 years of service which is creditable in determining the member or former member's eligibility for retired or retainer pay, or equivalent pay, and on the date of the final decree of divorce, dissolution, or annulment before April 1, 1985, had been married to the member or former member for a period of at least 20 years, at least 15 of which, but less than 20 of which, were during the period the member or former member performed service creditable in determining the member or former

8

member's eligibility for retired or retainer pay, and (ii) does not have medical coverage under an employer-sponsored health plan . . . .

10 U.S.C. § 1072(2)(G) (2012).

¶16. Section 1072(2)(H) limits the preceding section in the following manner:

> [A] person who would qualify as a dependent under clause (G) but for the fact that the date of the final decree of divorce, dissolution, or annulment of the person is on or after April 1, 1985, except that the term does not include the person after the end of the one-year period beginning on the date of that final decree . . . .

10 U.S.C. § 1072(2)(H) (2012).

¶17. Here, the final judgment of divorce was signed on November 14, 2007, and entered in the Office of the Chancery Clerk of the First Judicial District of Hinds County on November 15, 2007. Melanie testified unequivocally that she and James had been married for nineteen years and one month. The chancellor and the Court of Appeals, therefore, were correct in determining that Section 1072(2)(H) was inapplicable, since the Hanlins had not met the requirements of the federal statute. But that finding does not end the analysis of what constitutes "insurance benefits that are allowable by statute to the divorced spouse of a retired military person" according to the language of the PSA.

¶18. Section 1078a(b)(3) provides temporary continued health benefits coverage[2] for "[a] person who . . . (C) is not a dependent of the member or former member under subparagraph (F) or (G) of section 1072(2) of this title or ends a one-year period of dependency under

---

[2] *See* 10 U.S.C. § 1078a(a) (2012) ("The Secretary of Defense shall implement and carry out a program of continued health benefits coverage in accordance with this section to provide persons described in subsection (b) with temporary health benefits comparable to the health benefits provided for former civilian employees of the Federal Government . . . .").

subparagraph (H) of such section." 10 U.S.C. § 1078a(b)(2)(C) (2012). The Court of Appeals unanimously affirmed the chancellor's judgment, reasoning that, under 10 U.S.C. "section 1078a(a), Melanie was entitled to health-care coverage for at least one year." ***Hanlin***, 2014 WL 2723884, at *2. We agree with the Court of Appeals to the limited extent that Melanie may have had the ability under Section 1078a to seek and to obtain continuing coverage, even if she did not qualify as a dependent under Sections 1072(2)(F), (G), or (H).

¶19. But we find nothing in the record to suggest that James breached the PSA in any manner. Continued coverage was fully available to Melanie pursuant to the applicable federal statutes, but she did not take any affirmative steps to obtain the coverage which was available to her. Title 10, Section 1078a(c)(4), provides the following: "[i]n the case of a former spouse of a member or former member who becomes eligible for continued coverage under subsection (b)(3), the regulations shall provide appropriate notification provisions and a 60-day election period under subsection (d)(3)." 10 U.S.C. § 1078a(c)(4) (2012). Section 1078a(d)(3) provides:

> In the case of a former spouse of a member or a former member who becomes eligible for continued coverage under subsection (b)(3), the written election shall be submitted to the Secretary concerned before the end of the 60-day period beginning on the later of—
>
> (A)   the date as of which the former spouse first ceases to meet the requirements for being considered a dependent under section 1072(2); or
>
> (B)   such other date as the Secretary of Defense may prescribe.

10 U.S.C. § 1078a(d)(3) (2012). According to the applicable federal statutes, it is clear that the "insurance benefits that are allowable by statute to the divorced spouse of a retired

10

military person" required the divorced spouse to take affirmative steps in order to secure the benefits of coverage.

¶20.    In interpreting property settlement agreements, this Court has held that "[a]n agreement made between the parties should ordinarily be enforced, and the court should take a dim view of efforts to modify or reform the parties' settlement agreement." *McFarland v. McFarland*, 105 So. 3d 1111, 1119 (Miss. 2013) (citing *Williams v. Williams*, 37 So. 3d 1171, 1174 (Miss. 2010)). Where the court finds that the settlement agreement was a valid contract, "it should not modify anything decided by that agreement." *McFarland*, 105 So. 3d at 1119. The Court must first "determine whether the contract is ambiguous, and if it is not, then it must be enforced as written." *Id.* (quoting *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (Miss. 2012)).

¶21.    We do not find the term at issue in the Hanlins' property settlement agreement to have been ambiguous, which requires it to have been "susceptib[le] to two reasonable interpretations." *Epperson*, 93 So. 3d 10, 19 (Miss. 2012) (citing *Dalton v. Cellular South, Inc.*, 20 So. 3d 1227, 1232 (Miss. 2009)). The agreement unambiguously stated that "[t]he Husband agrees to maintain in full force and effect the insurance benefits *that are allowable by statute to the divorced spouse of a retired military person*." The meaning of the contractual term was readily ascertainable—through due diligence on Melanie's part—at the time she signed the property settlement agreement. Thus, as Melanie agreed, if James had given her "whatever the statute allowed and the statute didn't allow [her] any coverage, then [she] would not have been covered." Melanie was eligible for continuing coverage, but the

record reflects that she took no affirmative steps to obtain it. James should not be penalized where the coverage was fully available to Melanie, and she and her attorney merely failed to ascertain and take advantage of the insurance benefits "allowable by statute to the divorced spouse of a retired military person." In fact, Melanie testified that, "I was told by my attorney—by Jeff Rimes to have an insurance opinion to see what the deal really was." But there was no evidence presented that this, or any other action on Melanie's part, ever was taken to ensure continuing coverage.

¶22. We cannot, therefore, agree with the chancellor's determination to modify the agreement to require James to contribute to Melanie's post-divorce medical bills, nor can we agree with the affirmance of that judgment by the Court of Appeals. James was not in breach of the plain provisions of the property settlement agreement.

## CONCLUSION

¶23. In light of our holding that Melanie's contempt claims are barred by *res judicata*, we reverse and render the respective judgments of the Court of Appeals and of the Chancery Court of the First Judicial District of Hinds County.

¶24. **REVERSED AND RENDERED**.

**WALLER, C.J., DICKINSON, P.J., CHANDLER, KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., AND LAMAR, J., CONCUR IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. PIERCE, J., NOT PARTICIPATING.**

12