# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CT-00814-SCT

*SAMUEL TAYLOR SHIPLEY*

*v.*

*KRYSTALYNN LOPEZ SHIPLEY*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/23/2023 |
| TRIAL JUDGE: | HON. CHARLES E. SMITH |
| TRIAL COURT ATTORNEYS: | STEPHEN PAUL WILSON |
| | KENNETH DUSTIN MARKHAM |
| | FRANCES SMITH STEPHENSON |
| | DAVID A. STEPHENSON |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN S. GRANT, IV |
| ATTORNEY FOR APPELLEE: | JEFFREY BIRL RIMES |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART, AND REMANDED - 05/28/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The Lauderdale County Chancery Court modified Krystalynn and Samuel Shipley's previous custody arrangement, granting Krystalynn sole legal and physical custody of their three children.  Samuel appealed, and the Court of Appeals affirmed, finding that Samuel waived the issue of a guardian ad litem (GAL) appointment and finding the chancellor's

*Albright*[1] analysis was not erroneous. We granted Samuel's petition for certiorari. We reverse the chancery court's judgment on custody and remand the case for a full *Albright* analysis. We further clarify that the issue of appointing a mandatory GAL cannot be waived on appeal for failure to raise it in the trial court.

## FACTS AND PROCEDURAL HISTORY

¶2. Samuel and Krystalynn Shipley, who share three sons, S.S., N.S., and L.S.,[2] divorced in May 2021. In their settlement agreement, which was incorporated into the final judgment of divorce, they agreed to joint legal and physical custody, with physical custody alternating on a week-on-week-off schedule. In October 2021, Krystalynn filed a petition for contempt against Samuel, and in February 2022, she amended the petition to request a modification of custody, arguing that coparenting had become impossible and asking that the court grant her sole custody and allow Samuel visitation. Hearings on the petition occurred April 7, 2022, October 18, 2022, and June 13, 2023.

¶3. At the April 7, 2022, hearing, Samuel moved for a continuance due to his mental-health issues and asked that Krystalynn be granted temporary physical custody of the children for three months. Samuel had what he and the chancery court termed "episodes"[3] and was seeking treatment for several mental-health issues at the time. The chancellor granted the request, awarding Krystalynn temporary custody and awarding Samuel standard visitation.

---

[1] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

[2] We use the minor children's initials to protect their privacy.

[3] Samuel had a mental-health "episode" during the April 7, 2022, hearing.

2

¶4. In July 2022, Krystalynn married a man from Oregon whom she had met earlier that year. In September 2022, she moved with the three children to Oregon. At the October 2022 hearing, the court heard testimony about the children's lives in Oregon, but concluded the hearing without making any determination on the petition; instead, the chancellor scheduled a follow-up hearing.

¶5. In December 2022, shortly after Samuel had visited the children in Oregon during the Thanksgiving holiday, Krystalynn filed a child-abuse report against Samuel with the Oregon Department of Human Services (Oregon DHS). According to Krystalynn, L.S., who was three years old in December 2022, reported to her that Samuel had put L.S.'s penis in his mouth and had gotten angry when L.S. urinated in his mouth. She also noted that both she and Samuel had been dealing with all three children exhibiting oversexualized behavior, such as playing with one another's genitals. Oregon DHS investigated the claim and, according to Krystalynn's testimony, ultimately found that whether abuse occurred was "undetermined." Oregon DHS also suggested therapy for the children. Several months later, Krystalynn did utilize therapy services for the children.

¶6. The final hearing on the petition for contempt and modification was held in June 2023. The chancellor heard testimony from Samuel and Krystalynn regarding the children, including their health and education. Importantly, "Krystalynn did not plead or attempt to introduce evidence related to the sexual assault" allegations she had made in Oregon. *Shipley v. Shipley*, No. 2023-CR-00814-COA, 2025 WL 1376398, at *3 (Miss. Ct. App. May 13, 2025). Instead, on cross-examination, Samuel raised the issue, asking Krystalynn about

3

the allegations and resolution. Krystalynn testified about the charges and investigation briefly, but Samuel did not attempt to introduce into evidence the Oregon DHS report.[4]

¶7. The chancery court ultimately granted Krystalynn physical and legal custody and granted Samuel liberal visitation.[5] In doing so, the chancellor examined the *Albright* factors and found most of the factors favored neither parent, but the chancellor found that the mental health of the parents favored Krystalynn due to Samuel's mental-health issues. The chancery court mentioned neither Krystalynn's new husband nor the sexual-abuse allegations in its analysis. Neither party filed any post-trial motions.

¶8. Samuel appealed. For the first time on appeal, Samuel argued that the chancery court erred by failing to appoint a GAL *sua sponte* based on past charges of sexual abuse that Krystalynn made against Samuel to Oregon DHS. He also argued, among other issues, that the chancery court erred in its evaluation of the *Albright* factors. A divided Court of Appeals affirmed the chancery court's decision. *Shipley*, 2025 WL 1376398, at *12. Regarding the GAL issue, the Court of Appeals found that the issue was not properly preserved for appeal because the trial court had never considered it, either in proceedings or in post-trial motions. *Id.* at *10-11. It then noted that chancellors have some discretion in navigating the concerns

---

[4]Samuel moved for the Court of Appeals to take judicial notice of the Oregon DHS report, but the Court of Appeals denied his motion. *Shipley*, 2025 WL 1376398, at *10 n.3.

[5]The chancellor also found Samuel in contempt for failing to pay Krystalynn money owed under the original divorce decree and property settlement, and noted that the evidence supported Krystalynn's allegations that Samuel has harassed her and broken into her home late at night. Samuel did not appeal the contempt issue.

4

raised in a custody case.  *Id.* at *11.  Additionally, the Court of Appeals found the chancery court did not reversibly err in its *Albright* analysis and custody conclusions.  *Id.* at *6-9.

¶9.    The dissent argued that finding that Samuel waived the GAL appointment issue was inappropriate because Krystalynn did not raise waiver, and a party can waive a waiver argument.  *Id.* at *12-13 (Wilson, P.J., dissenting).  The dissent further argued that when a GAL appointment is mandatory, the chancellor is required to appoint a GAL even when one is not requested, and that appointing a GAL is for the protection of the child, not for the parties' benefit.  *Id.* at *13.  It concluded that the GAL appointment was mandatory in this case, and that the failure to appoint a GAL requires reversal.  *Id.* at *12-13.  The dissent also argued that an appellate court cannot ascertain whether the *Albright* analysis was in the children's best interests "because the record discloses only the barest details regarding Krystalynn's new home and living situation in Oregon and *no evidence* regarding her new husband, who will be living with and helping parent the children."  *Id.* at *12.  The analysis "likewise fails to mention or address Krystalynn's remarriage and new husband."  *Id.*  The dissent conceded that litigants usually have the duty to present evidence to the court, but alleged that the chancery court has a greater responsibility to make a searching inquiry when necessary as the superior guardian of children.  *Id.* at *14.

¶10.    Samuel filed a petition for certiorari with this Court.  In it, he argues (1) the Court of Appeals decisions that the GAL issue was waived and that the chancery court was not required to appoint a GAL are contrary to the law; (2) the chancellor failed to consider the totality of the circumstances, and the Court of Appeals' decision affirming the chancellor is

5

contrary to precedent; (3) the Court of Appeals erred by upholding the chancery court's *Albright* analysis in which the chancery court failed to address important factors impacting the children's best interests; (4) the award of child support should be reversed and remanded because custody should be reversed and remanded. We grant certiorari to address the GAL issue and the *Albright* analysis. M.R.A.P. 17(h) ("The Supreme Court may limit the question on review.").

## ANALYSIS

*1. Standard of Review*

¶11. In child-custody cases, the standard of review is limited; if the chancellor's custody determination is supported by substantial evidence, we do not reverse "unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard." *Smith v. Smith*, 206 So. 3d 502, 509 (Miss. 2016) (citing *Borden v. Borden*, 167 So. 3d 238, 241 (Miss. 2014)). "Legal questions, however, are reviewed de novo." *Sanford v. Sanford*, 124 So. 3d 647, 652-53 (Miss. 2013) (citing *Shelnut v. Dep't of Hum. Servs.*, 9 So. 3d 359, 363 (Miss. 2013)).

*2. Guardian ad Litem*

¶12. Whether the appointment of a mandatory GAL may be waived by a party's failure to raise the issue at trial is a legal question that we review de novo. Mississippi Code Section 93-5-23 authorizes certain procedures when a party alleges during a custody proceeding that the other party has abused a child whose custody is at issue. Miss. Code Ann. § 93-5-23 (Supp. 2025).

6

> Whenever in any proceeding in the chancery court concerning the custody of a child a party alleges that the child whose custody is at issue has been the victim of sexual or physical abuse by the other party, the court may, on its own motion, grant a continuance in the custody proceeding only until such allegation has been investigated by the Department of Child Protection Services.

*Id.* Further, "[t]he court may investigate, hear and make a determination in a custody action when a charge of abuse and/or neglect arises in the course of a custody action as provided in Section 43-21-151, and in such cases the court shall appoint a guardian ad litem for the child . . . ." *Id.* This Court has interpreted these two provisions in the same statute as granting a chancellor "two options for handling abuse allegations lodged during a custody proceeding. The chancellor may either (1) stay the proceeding until the allegations are fully investigated by DHS or (2) adjudicate the abuse allegations subject to Mississippi Code Sections 43-21-121 and 151 and the Mississippi Uniform Rules of Youth Court Practice." *Smith*, 206 So. 3d at 510 (citing Miss. Code Ann. § 93-5-23 (Rev. 2013)). "When a chancellor chooses to hear the abuse allegation during a custody hearing, appointment of a GAL is mandatory." *Id.*

¶13. However, the mandatory nature of the GAL appointment is only triggered "where the allegations of abuse and/or neglect rise to the level of a 'charge of abuse and/or neglect,' . . . . [and] [i]n these situations the chancellor is required to appoint a guardian ad litem, whether the parties requested a guardian ad litem or not." *Carter v. Carter*, 204 So. 3d 747, 759 (Miss. 2016) (citations omitted). The statute provides the chancellor some discretion to determine whether a legitimate issue of abuse or neglect exists, in other words, whether the "issues of abuse or neglect have sufficient factual basis to support the appointment of a

7

guardian ad litem." *Id.* Thus, the chancellor need not appoint a GAL based on unsubstantiated assertions, and the chancellor has discretion to determine if an investigation is warranted; such exercise of discretion is reviewed under the limited standard of review. *Id.*

¶14. First, we clarify that when the appointment of a GAL is mandatory, a party cannot waive the issue on appeal by failing to raise the lack of appointment in the trial court. Any holding to the contrary by the Court of Appeals is overruled. When the allegations rise to the level of a "charge of abuse and/or neglect," the statute imposes an unequivocal duty on the *chancellor* to appoint a GAL for the benefit of the *child or children*; the parties do not have a duty to request one under these circumstances, and the chancellor must appoint one even when the parties do not request one. Miss. Code Ann. § 93-5-23 (Supp. 2025); *Carter*, 204 So. 3d at 759. As noted by the Court of Appeals' dissent, the appointment of a GAL is for the protection and welfare of the child, not for the benefit of the parties. *See Monk v. Fountain*, 296 So. 3d 761, 765 (Miss. Ct. App. 2020). Thus, the failure to appoint a mandatory GAL is an issue that is not waived on appeal based on a party's lack of objection in the chancery court.

¶15. However, the law still stands that the chancellor first has the discretion to determine whether the allegations and issues fit within the statute's requirements, thus, whether the allegations trigger the mandatory appointment of a GAL in the first place.[6] In this case, the

[6]While the chancellor failed to exercise such discretion in this case, the record is sufficient to determine that the situation did not fall within the statute. *See Selman v. Selman*, 722 So. 2d 547, 554 (Miss. 1998) (failure to make findings is not reversible unless it constitutes manifest error).

situation does not fit within the statute's parameters that trigger a mandatory appointment. This was not a charge by one party against the other party that arose within the confines of this case. Rather, Krystalynn reported the allegation to Oregon DHS, which conducted an investigation to conclusion. She never raised this allegation to the chancery court in a pleading, in testimony, or otherwise. She never attempted to raise these allegations in any way within the custody proceeding. Rather, Samuel raised the issue in his cross-examination of Krystalynn. He did not make a charge of abuse against himself within the meaning of the statute. Rather, he attempts to attack Krystalynn's credibility and/or attempts to make an argument about Krystalynn's parenting by raising the fact that she made an allegation to Oregon DHS.[7] He repeatedly characterizes this negatively against her by arguing that it is a false allegation. His attempts do not arise to the level of a charge of abuse that triggers a mandatory GAL appointment; rather, Samuel must provide evidence regarding credibility or other issues to support his arguments. He did not do so, and his attempts to do so through cross-examining Krystalynn do not amount to a charge of abuse within the meaning of Section 93-5-23. Consequently, the chancellor did not err by failing to appoint a GAL.

---

[7]Moreover, the spirit of the statute was satisfied, as a child protection agency investigated the allegations to conclusion. It is difficult to imagine how, when pertaining to a then-three-year-old child who now lives in Oregon, a Mississippi GAL will be able to ascertain any more than did Oregon DHS. While this Court does not generally examine evidence outside the trial court record, we reference the Oregon DHS report for illustrative purposes only, in order to demonstrate that the report does not indicate that Krystalynn filed a false report, as Samuel is asking us to believe. Oregon DHS concluded that the allegations were "unable to determine," which is not equivalent to unsubstantiated or falsified. It stated that "[t]hough there is some indication of sexual abuse toward [L.S.], there is insufficient and conflicting information to conclude there is reasonable cause to believe the sexual abuse did occur."

*3.      Custody Analysis*

¶16.      At the heart of a custody analysis are the best interests of the child. ***Riley v. Doerner***, 677 So. 2d 740, 744 (Miss. 1996). Further, "[b]y our Constitution and ancient law, a court of equity is the superior guardian for all persons under a disability, and under a duty to make a searching inquiry on matters affecting their welfare."[8] ***Hill v. Smith (In re Adoption of a Minor)***, 558 So. 2d 854, 857 (Miss. 1990). As such, a chancellor should "proceed deliberately and only after assuring himself that all facts needed for the child's best interest are brought to his attention." *Id.* at 858. In this case, the chancellor knew that Krystalynn had remarried and move the children to Oregon to live with their new stepfather. Yet, the chancellor did not even mention the stepfather in his *Albright* analysis, except to state that Krystalynn's spouse earned an income sufficient to allow her to be a stay-at-home mother. Testimony regarding the stepfather was also nearly nonexistent. Moreover, very little evidence was adduced regarding the new home and living situation of the children in Oregon, nor was it discussed in any detail in the chancellor's opinion. While the parties certainly have an obligation to place evidence before the court, the chancellor clearly knew about the children's living with their new stepfather and about the new living situation overall for the children, and failed to make a searching inquiry or assure himself that he had all facts needed to determine the children's best interests. A child's best interests can rarely be ascertained without some information regarding the people with whom the child is living, particularly an adult who is involved in parenting the child. As such, the chancellor abused his discretion

_____

[8]"[T]his Court on appeal, just as the chancellor in a hearing, is the superior guardian for a person under disability. . . ." *Hill*, 558 So. 2d at 858.

10

by failing to adduce information on these important issues and by failing to include information about these issues in the *Albright* analysis and ultimate custody determination.

¶17.    We therefore reverse the chancellor's custody determination and remand the case for a custody determination that includes the totality of the information necessary to adequately determine the children's best interests.  That information should, at the least, include information regarding the children's stepfather or any other adult with whom they currently live and general information about their living situation.

## CONCLUSION

¶18.    The judgment of the Court of Appeals is reversed in part.  Because the chancellor's *Albright* analysis failed to include several pieces of information that are crucial to determining the best interests of the children, we reverse the chancery court's judgment on custody and remand the case for an *Albright* analysis that includes all such crucial information consistent with this opinion.  If necessary after the completion of the *Albright* analysis, the chancery court may revisit child support.  While we find no error in the chancellor's failure to appoint a GAL in this case, we hold that parties do not waive on appeal the issue of appointment of a mandatory GAL for failure to raise it in the chancery court.

¶19.    **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

        **RANDOLPH, C.J., COLEMAN, P.J., ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**

11